**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

DEBRA J. THAXTON,  :

                        Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                        Defendant.  :

Case No. 3:07-cv-105

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits

prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on July 14, 1993, alleging disability from March 30, 1991, due to multiple impairments. *See* Tr. 42-45. Plaintiff's application was granted at the hearing level. *Id.* At some point, Plaintiff married and was removed from SSI pay status. (Doc. 8 at n.1). Her earning record shows earnings for the years 1999 through and including 2003. (Tr. 68-70; 76).

Plaintiff filed a second application for SSI on June 4, 2003, alleging disability from January 1, 2003, due to back and neck impairments and manic depression. (Tr. 63-65; 83-92).

Plaintiff's application was denied initially and on reconsideration. (Tr. 48-51; 53-55). A hearing was held before Administrative Law Judge Daniel Shell, (Tr. 313-30), who determined that Plaintiff is not disabled. (Tr. 16-30). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that Plaintiff has severe degenerative disc disease of the cervical and lumbosacral spine, dysthymic disorder, and panic disorder without agoraphobia, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 29, finding 2). Judge Shell also found that Plaintiff has the residual functional capacity to perform a limited range of medium work. *Id.*, findings 3, 5. Judge Shell then found that Plaintiff's past relevant work as a housekeeping cleaner did not require the performance of work-related activities precluded by her limitations. *Id.,* finding 6. Judge Shell concluded that Plaintiff is able to perform her past relevant work as a housekeeping cleaner and therefore is not disabled under the Act. *Id.,* finding 7; Tr. 30.

Treating neurosurgeon Dr. Goodall reported in January, 2004, that he treated Plaintiff intermittently August, 1991, through April, 1999, that she had returned to his care on January 30, 2003, and that he last saw her on February 27, 2003. (Tr. 155; *see also,* Tr. 156). Dr. Goodall also reported that a myelogram showed disk pathology at C5-6 on the left and in the lumbar region at L4-5 on the left, (Tr. 152-53), and that Plaintiff opted not to undergo surgical care, but rather pain management. *Id.* In March, 2004, Dr. Goodall reported that Plaintiff's diagnoses were cervical and lumbar radiculopathy, that he had not seen her in over a year, that she was able to stand/walk for 1-2 hours in an 8-hour day and for 1/4 hour without interruption, sit for 4 hours in an 8-hour day and for ½ hour without interruption, and that she was able to lift/carry up to 5 pounds occasionally. (Tr.

157-58).

Examining psychologist Dr. Boerger reported on August 18, 2003, that Plaintiff went to the 11th grade, stood frequently during the interview, had appropriate, relevant, and coherent speech and thought processes and a flat affect, reported having panic attacks on an occasional basis, and that she appeared to be very preoccupied with pain. (Tr. 160- 64). Dr. Boerger also reported that Plaintiff was alert and oriented, reported having difficulty concentrating and remembering things, seemed to be of low average range intellectual abilities, appeared to be aware of her health and emotional problems, displayed characteristics of depression and anxiety, and that her diagnoses were dysthymic disorder and panic disorder without agoraphobia. *Id.* Dr. Boerger assigned Plaintiff a GAF of 52 and opined that her ability to relate to others was mildly impaired, and her abilities to understand and follow instructions, maintain attention to perform simple, repetitive tasks, and withstand the stress and pressures associated with day-to-day work activity were moderately impaired. *Id.*

The record contains a copy of Plaintiff's treatment notes from Health Partners of Miami County dated September 18, 2003, through March, 2004. (Tr. 243-48). Those notes reveal that Plaintiff received treatment at that facility for chronic neck and back pain, depression, dermatitis, and hypothyroidism. *Id.*

Plaintiff was evaluated at the Miami County Mental Health Center in November, 2003, at which time it was noted that Plaintiff had been experiencing depression for several years, that it became worse when she had some back and neck injuries, and that she had been living with chronic pain. (Tr. 200-15). It was also noted that Plaintiff's mood was depressed and anxious, she was fully oriented, and her memory, judgment, and insight were intact. *Id.* Plaintiff's diagnoses

were identified as dysthymia and panic disorder without agoraphobia. *Id.* Due to illness and transportation issues, Plaintiff did not return to the Mental Health Center until March, 2004. *Id.* In June, 2004, it was noted that Plaintiff's issues were unresolved, she did not follow through with counseling, her diagnoses were dysthymia and panic disorder without agoraphobia, and her GAF was 57. *Id.* In January, 2005, Plaintiff resumed counseling at the Mental Health Center to get help on how to cope with her pain. (Tr. 265-69).

Dr. Goodall reported on January 23, 2005, that Plaintiff was able to lift/carry up to 5 pounds occasionally, stand/walk for 2 hours in an 8-hour day and for 1/4 hour without interruption, sit for 8 hours in an 8-hour day and for ½ hour without interruption, and that she was not able to perform light work or sedentary work on a sustained basis. (Tr. 226-31).

Examining physician Dr. Duritsch reported on April 13, 2005, that Plaintiff stated she was diagnosed with fibromyalgia two months ago, that she complained of pain throughout her whole body since she was 15 years old, and that she previously had a cervical fusion in the mid-1990s. (Tr. 232-42). Dr. Duritsch also reported that Plaintiff was able to walk easily and freely, walk on her heels and toes, had normal ranges of motion, 4/5 strength in the upper and lower limbs, had give-away weakness in the upper limbs bilaterally, and could not provide a full effort. Dr. Duritsch noted that Plaintiff had a normal grip strength, simulated trunkal rotation increased her low back pain, straight leg raising was inconsistent, and that there was a great deal of pain behavior. *Id.* Dr. Duritsch also noted that Plaintiff began crying midway through the exam when just performing the normal active range of motion without any resistance, there was no atrophy, spasticity or clonus, there was tenderness to palpation and tightness of the bilateral lower cervical paraspinals and upper trapezius only, and there was not a significant degree of myofascial tightness and tenderness in the

thoracic and lumbar paraspinals, proximal gluteal musculature, lateral epicondyles, and in the anterior shoulders. *Id.* Dr. Duritsch's assessment and impression were recent diagnosis of fibromyalgia with no typical trigger points consistent with fibromyalgia on examination, history of depression and anxiety, history of cervical diskectomy with no ongoing residual, and an entirely nonfocal neurological examination involving the upper limbs. *Id.* Dr. Duritsch opined that he could not establish any objective limits in Plaintiff's abilities to sit, walk, lift, carry, and handle objects. *Id.*

On May 23, 2005, Plaintiff's counselor at the Mental Health Center reported that she had been treating Plaintiff periodically since November, 2003, and had last seen her on April 28, 2005, and that Plaintiff was not able to perform several work-related mental activities. (Tr. 256-64).

The record contains a copy of Plaintiff's treatment notes from the Victor J. Cassano, Sr., Community Health Center dated October 24, 2004, through August, 2005. (Tr. 216-25; 249-54; 270-76). Those notes indicate that Plaintiff received general medical care at that facility for various complaints and conditions including fibromyalgia, depression/anxiety, a thyroid disorder, back pain, and chest pain. *Id.* Those notes also indicate that Plaintiff was non-compliant. (Tr. 270).

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting treating physician Dr. Goodall's opinion and by failing to give good reason for doing so. (Doc. 8).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social*

*Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

Judge Shell rejected Dr. Goodall's opinion that Plaintiff is not capable of performing even sedentary work on the bases that Dr. Goodall did not support his opinion with any objective

medical evidence or clinical findings and the opinion was inconsistent with the overall evidence of record. (Tr. 25).

Although Dr. Goodall essentially opined in January, 2004, that Plaintiff had a residual functional capacity that was inconsistent with the ability to perform substantial gainful activity, he did not support his opinion with any clinical findings. In offering his opinion, the only medical information Dr. Goodall referred to was a previous MRI which Dr. Goodall previously described in his February, 2003, clinical notes as revealing, at worst, an extradural defect at C5-6 and at L4-5 on the left. (Tr. 231). Similarly, Dr. Goodall reported in January, 2005, that Plaintiff was not able to perform either light or sedentary work. However, the only medical information on which he relied in forming his opinion was a "prior myelogram".

A review of Dr. Goodall's office notes reveal that they contain few objective clinical findings. For example, in January, 2003, he noted that Plaintiff exhibited only decreased biceps reflex and decreased pinprick and that she had good muscle strength, straight leg raising to 90 degrees, and no pathological reflexes. (Tr. 231). In July, 2004, he reported that Plaintiff had diffuse decreased pinprick throughout the left upper and lower extremities, and a positive Tinel's in the right and a positive Spurling's. However, Dr. Goodall also noted that Plaintiff had equal reflexes, good muscle strength, and negative straight leg raising to 80 degrees on the right and to 70 degrees on the left.

This Court notes that while Dr. Goodall offered his opinions in January, 2004, and January, 2005, his office notes reveal that he did not see Plaintiff between 1991, and January, 2003, between February, 2003, and July, 2004, or after July, 2004. (Tr. 231).

9

In addition to not being supported by objective clinical findings, Dr. Goodall's opinion is inconsistent with the other evidence of record. For example, examining physician Dr. Duritsch reported that Plaintiff exhibited give-away weakness, her clinical findings were inconsistent, she engaged in a great deal of pain behavior, and that she did not provide full effort. Dr. Duritsch opined that there were no objective limits on Plaintiff's abilities to perform work-related physical activities. Further, Dr. Goodall's opinion is also inconsistent with the reviewing physicians' opinions. (Tr. 165-69).

Under these facts, the Commissioner did not err by rejecting Dr. Goodall's opinion.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

February 22, 2008.

                           *s/ Michael R. Merz*
                           Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).